## MARSH v. CORTIS.

(Circuit Court, D. Massachusetts. February 21, 1906.)

### No. 1,499.

CANCELLATION OF INSTRUMENTS—FRAUD—EVIDENCE CONSIDERED.

    Evidence considered, and *held* insufficient to make out a case of fraud in the making of a contract for the assignment of a patent which entitled complainant to its cancellation; it appearing that the terms were dictated by him and read over to him as taken down, and that the final draft was again read to him before signing.

In Equity.

George A. Sanderson and F. N. Wier, for complainant.
Charles L. Burdett and Robert W. Light, for defendant.

COLT, Circuit Judge. This bill is brought for the surrender and cancellation, on the ground of fraud, of the following agreement and assignment:

"New York City, March 22d, 1899.

"Memorandum of Agreement.

"This agreement between Riverius Marsh of New Brunswick, state of New Jersey, and Dwight T. Cortis, of Boston, Mass., witnesseth, that the said Marsh hereby agrees to sell and assign the entire right and interest in his pending application for U. S. letters patent on improvements in lamp chimneys now pending and involved in interference with the application of Prendergast & Slinack; also to give to the said Cortis the sole selling agency for certain inventions and improvements made by and belonging to said Marsh in a chimney shield, in a compound or double chimney shield, in a new burner of cheap construction, in a yielding support for Welsbach mantels, and also in the devices put out in what is called 'The Lighthouse Chimney' business, and in lamps of similar construction, the said agency to begin and take effect as soon as the pending agreement between said Marsh and Alexander P. White of Brooklyn, can be settled so as to free said Marsh from any and all claims by said White.

"In consideration of this assignment and of the agreements aforesaid, the said Cortis agrees to conduct the said interference suit, and to pay all the expenses thereof; said Cortis is to advance the money needed to obtain letters patent of the United States on such of the devices mentioned herein as he may accept within one month of the time when a specimen of the perfected device, or a complete drawing showing such device in operative form may be submitted to him by said Marsh; the said Cortis agrees to give the said Marsh a personal license to use the improvements covered by any patent that may be granted on the application involved in said interference, Marsh v. Prendergast & Slinack, in case this agreement may be terminated by the death of said Cortis; said Cortis hereby agrees to pay to said Marsh for the said agency and for an undivided one-half interest in all the proceeds from the sale of the said patented devices and right under patents to be obtained as aforesaid (except as to the application now in interference) an amount equal to one-half the net profits of the business to be conducted under this agreement in all except the devices covered by the patent to be granted on the application now involved in the pending interference. Said Cortis hereby agrees to furnish the money needed in said business according to his judgment.

"The said Marsh is to draw $25.00 per week, which is to be deducted from the amount due and payable to him as aforesaid, and an approximate settlement between the parties hereto shall be made at regular intervals of three months from the date of the starting of business hereunder.

"In all patents taken out under this agreement (not referring to the one involved in said interference) the said Marsh and said Cortis shall have an undivided half interest and shall share equally in all amounts or considerations that may be received from the sale of devices under said patent or of rights thereunder, and this is binding upon the heirs and assigns of the respective parties hereto.

"Witnesses: Riverius Marsh.
"Chas. L. Burdett. "Dwight T. Cortis.
"M. C. Hersey."

"Assignment.

"Know all men that I, Riverius Marsh, of New Brunswick, in the county of Middlesex and state of New Jersey, for the consideration of one dollar, full receipt whereof is hereby acknowledged, and of other valuable considerations, do hereby assign to Dwight T. Cortis, of Boston, in the county of Suffolk, and state of Massachusetts, the entirety of an invention in lamp chimneys set forth in my application for United States letters patent thereon filed October 25, 1897, of serial No. 656,306 together with all rights and privileges granted by said letters patent to be issued, and I hereby authorize and request the Commissioner of Patents to issue said letters patent to said assignee.

"I, for myself, my heirs and assigns covenant with said assignee, his heirs

and assigns that I have the lawful right to assign said invention and letters patent as herein expressed and that the interest herein conveyed is free from all prior assignment, grant, mortgage, license, or other incumbrance whatever.

"In witness whereof, I hereunto set my hand this 22d day of March, A. D. 1899.                                      Riverius Marsh.

"State of New York, County of New York—ss.:

"Subscribed before me by the said Riverius Marsh this 22d day of. March 1899.

"[Seal.]                                      E. Whitney, Notary Public."

The material allegations of the bill may be summarized as follows:

Prior to 1897 the complainant, Marsh, invented a lamp chimney, and on October 25, 1897, applied for a patent thereon. Subsequently there were interference proceedings in the Patent Office between Marsh and Prendergast and Slinack to determine the right to the invention. While these proceedings were pending the defendant, Cortis, represented to Marsh that he was not the agent for, or in any way influenced or controlled by, any corporation using or interested in the Welsbach system of lighting, and that he was not agent for or in any way influenced or controlled by Prendergast and Slinack, and that he would aid the defendant in the interference suit. Cortis further represented to Marsh that he would engage in business with him in the manufacture and sale of articles invented by him, that he would furnish the capital for doing the business and divide the profits equally, and that he would pay to Marsh $25 a week in addition as salary. Relying on these representations Marsh was induced to sign the above agreement and assignment.

After the papers were signed and delivered, it is alleged that Cortis failed to carry out any part of the agreement. He furnished no capital, and expended no money for manufacturing and selling goods, except a small sum in connection with the interference proceedings. The interference proceedings were decided in favor of Marsh, and letters patent No. 652,730 were, by reason of the assignment, issued to Cortis. Marsh has often requested Cortis, in accordance with the terms of the agreement, to apply for patents upon his inventions, to furnish capital to manufacture goods and to begin business; but Cortis has failed to carry out the agreement, except in connection with the assigned patent, and has failed to pay to Marsh $25 a week as provided in the agreement, or other sum except $52 expended by him in the interference proceedings.

The invention covered by the assignment is alleged to be of great value for use in lighting streets and exposed places with what is known as the Welsbach light. Upon information and belief it is charged that, at the time the agreement was made, Cortis was the agent for and was influenced and controlled by certain corporations using and interested in the Welsbach system of lighting, and was working in the same interest as Prendergast and Slinack in the interference proceedings; that Cortis, when he made the agreement, had no intention of carrying it out; that he had but one purpose, to obtain Marsh's rights in the invention covered by the application, for the benefit of himself and for the corporation engaged in street lighting with the Welsbach system.

An amendment to the bill contains the following allegations:

"And the plaintiff further says that the defendant did not agree or intend to agree to give the plaintiff any adequate consideration, or any consideration whatever, for the assignment of said patent and for the other agreements entered into as aforesaid by the plaintiff."

"That the defendant and his said attorney, intending to obtain from the plaintiff for the defendant a title to the plaintiff's said invention without giving the plaintiff any consideration therefor, representing to him that the said Burdett would draw a fair agreement as between man and man, and that he would draw an agreement according to the representations and oral agreement previously made between the parties as aforesaid, and unduly and fraudulently induced and influenced the plaintiff to sign said memorandum of agreement and said assignment, and further represented, after said memorandum of agreement was drawn, that it provided among other things that the defendant should engage in business with the plaintiff in the manufacture and sale of articles invented by the plaintiff, and that he, the defendant, would furnish the capital for doing said business, and that the profits should be equally divided and that the defendant would pay the plaintiff the sum of twenty-five ($25) dollars a week in addition as salary."

"That the defendant and his counsel further represented that a delay in executing said memorandum of agreement and of the assignment of said patent would be dangerous."

"That because of the said representations and the undue and fraudulent inducements and influences of the defendant and his said attorney, the plaintiff was induced to sign said memorandum and assignment without advice of counsel and in the belief that said memorandum provided for a contract the terms of which were the same as had been orally agreed upon between the plaintiff and the defendant as hereinbefore set forth, whereas in truth and in fact the said memorandum of agreement did not set out in terms and effect the terms of said oral agreement, as the defendant and his attorney then and there well knew, and whereas in truth and in fact a delay in executing said memorandum of agreement and said assignment would not have been dangerous."

While admitting the due execution of the agreement and assignment, the answer denies every allegation of the bill charging deceit, conspiracy, misrepresentation, or undue influence. The only evidence offered in support of the bill is the testimony of the complainant, Marsh, and of the defendant, Cortis, called as a witness by Marsh, and certain letters and telegrams.

It appears from the evidence that Marsh was a somewhat visionary inventor, and that Cortis was a merchant who had quite an extensive store in Boston, where he sold gas stoves and gas-burning devices of all kinds. Marsh was desirous of forming a business connection with some one who would advance the necessary money for him to obtain patents on his various inventions, who would also assist him in selling his patented devices, and who would pay the expenses of the contest in the Patent Office respecting his lamp-chimney patent then in interference. There had been two or three interviews between the parties previous to the meeting in New York on March 22, 1899, when the agreement and assignment in suit were executed. There is a direct conflict as to the oral agreement made by the parties previous to the New York meeting. Marsh testifies that Cortis had orally agreed to engage in business with him in the manufacture and sale of articles invented by him, to furnish capital for the business, and to divide the profits equally, and at the same time pay him in addition $25 a week salary. On the other hand, Cortis testifies that the only oral agreement was to the effect that he would pay the expenses in the interference proceedings, and in addition would pay Marsh $200 for his patent when

obtained. That Cortis so understood the oral agreement also appears from his letter to Marsh of March 16th, in which he says:

"Confirming my oral agreement I will conduct your side of the case in this interference, and pay all expenses, and in addition thereto will pay you two hundred dollars ($200) for the invention and patent, if we win the case."

At the same time, there seems to be no doubt that Marsh understood that the oral agreement contemplated other things besides the assignment of the lamp-chimney invention then in interference, for on the following day, March 17th, he wrote Cortis a letter in which he says:

"Your assignment form for invention serial No. 656,306 at hand. If we put a part of the oral agreement in writing, I want all of the leading points included; otherwise it shows I am grossly careless and unfit to do business."

The New York interview was brought about by another letter from Cortis to Marsh under date of March 16th, which says:

"I called on Mr. Burdett on my way back from New York yesterday, and expect now that I will be in New York on next Tuesday morning on other business, and will arrange to have Mr. Burdett be there, so that we can talk the evidence over and get the matter of application now in the Patent Office in shape to take testimony at an early date. Please have all the evidence you can get at hand, but do not talk to anybody about the matter except your own witnesses."

By reason of this letter, the point is taken by the complainant that the purpose of the New York meeting, as he understood it, was simply to talk over the evidence in the interference proceedings; that he was taken by surprise when other matters came up for consideration; and that he was wholly unprepared at this time to enter into a written contract, or to make an assignment of the lamp-chimney patent. In determining a question of this character, the letters between the parties are entitled to great weight, and they must be considered more reliable evidence than the recollection of a witness after the lapse of several years. From the correspondence which immediately preceded this meeting, when read in connection with the whole evidence, it would seem to be reasonably clear that Cortis attended this meeting for the purpose of talking over the evidence in the interference case, and also for the purpose of obtaining an assignment of the lamp-chimney invention, and that Marsh attended the meeting for the purpose of talking over the same evidence and also for the further purpose of putting "all of the leading points" of the "oral agreement in writing," if a part was put in writing, as mentioned in his letter of March 17th.

There were present at the New York meeting Marsh, Cortis, and Mr. Burdett, who was counsel for Cortis in the interference proceedings. At this meeting it appears that the following suggestions as to an agreement were dictated by Marsh and taken down by Burdett:

"Memorandum.

"Confirming our oral agreement I will sell to you my entire right in my pending application No.        now in interference        and also to give to you the sole selling agency for and my improvement in chimney protectors, in the compound shield, in the new burner of cheap construction, in the yielding  in the yielding support for Welsbach mantle and in the oil-can-and faucets 'lighthouse chimney business' including lamps of similar construction as soon as the pending agreement between myself and Alexander P. White can be settled so as to free me from that any claim on his part.

"~~You~~ In consideration of this you agree to contest the interference suit and to pay all the expenses and take out the patent; to pay the expenses of obtaining U. S. Letters Patent on such such of the devices mentioned as he may accept ~~wh~~ within one month of the time when I submit a specimen of the perfected invention to ~~him~~ you; or a complete drawing of an operative device; you are to give me a personal license to use the improvements in ~~patou~~ any patent that be granted on the application No.    ~~in case this~~ in case this agreement may be terminated by ~~agreement of paries on the transfer patent should do~~ your decease; ~~and~~ you are to pay me ~~an amount~~ for these rights an amount equal to one-half the net profits on the business to be conducted ~~in~~ under this agreement in all except the devices covered by the patent to be granted on the said application now pending No.

"Marsh is to ~~be paid from the profits of the~~ draw $25 per week which is to be deducted from the ~~p~~ amount due to and payable to Marsh as aforesaid; ~~settlement and~~ an approximate settlement between the parties shall be made at     on regular intervals of three months from the date ~~hereof~~ of starting the business.

"In all patents taken out under the agreement except the first the parties hereto shall own an undivided half interest ~~in all such patents and any~~ and all proceeds from said patents or the sale of rights thereunder. This is binding on the heirs and assigns of the respective parties."

Upon cross-examination, Marsh testified, in answer to questions propounded by Burdett, as follows:

"Q. Then, so far as you know, my [Burdett's] knowledge of any oral agreement came wholly from you, did it not? I am asking now of your own knowledge.

"A. Yes; of my own knowledge it came wholly from me, because just previous to that I had refused a certain agreement from Mr. Cortis. He had made a different proposition entirely.

"Q. And the pencil memorandum, as it was being made, was not read to you piecemeal, was it?

"A. Oh, yes; you read it.

"Q. Mr. Burdett read to you the memorandum step by step, as you stated what you wanted, did he not?

"A. Well, as certain points came up, you put it down in shape, in legal form.

"Q. Was it not put down in pencil memorandum?

"A. In pencil memorandum: yes. You worded the agreement so as to embody, I suppose, what I had told you.

"Q. And it was read to you part by part and step by step, and you were asked whether that was what you meant and what you wanted, was it not?

"A. I think it was.

"Q. And you were handed one of those three copies, were you not?

"A. I was handed a copy; yes, sir.

"Q. And you read it?

"A. I read it."

Cortis testified as follows:

"Q. Was every word of this agreement dictated to Mr. Burdett by Mr. Marsh?

"A. It was.

"Q. Who dictated to the stenographer?

"A. Mr. Burdett read the notes, as I remember it. Mr. Burdett read from a paper that he took the figures down on, or the agreement down on.

"Q. That was from the paper on which he had put down the suggestions made to him by Mr. Marsh?

"A. Mr. Marsh."

The evidence shows that Marsh inspired the agreement, that its terms were dictated by him, that it was then read to him step by step as it was taken down, and that the final draft was again read by him before signing.

In the subsequent letters of Marsh to Cortis there is no intimation that the agreement was not a fair one, or that it was obtained by misrepresentation, or that it did not embody the previous oral agreement, or that its terms were not exactly what the parties intended. Out of the somewhat voluminous correspondence the following letters will sufficiently disclose Marsh's frame of mind, his great interest in his numerous inventions, and his desire to carry out the contract:

"New York, April 13th, 1899.

"Dwight T. Cortis, Esq., 22 West St., Boston, Mass.—Dear Sir: Mr. Burdett writes me under date of April 12th. He proposes to commence taking testimony in Hartford by the middle of next week. I write him I will be on hand in time to assist in opening up the case. I think he is more than satisfied with the amount of proof I have secured. When you were here last I hoped to have shown you my improvements in burners. The application now in the Pat. Office for some 10 or 15 Claims is sure to be granted in whole or in part. A portion of the claims simply require a slight alteration. My improvement in Chimneys and Reflectors I have now included in more recent improvement in Burners under the title of Improvements in Gas Lamps as this may enable us to save the cost of several patents for the several co-operative parts. If I am not in error you wish me to hand over both of these cases to Mr. Charles L. Burdett as soon as practical. It will not require much time to find out about the third application for Burners, which I supposed was in the Patent Office over six months since. I await papers I loaned Mr. Burdett for a day—and for which I have waited over 28 days, which I expect Friday a. m. I hardly look for you this week. Light-House sales July 1898 to March 1899—8 months, were $6,130.86. Mr. White agreed to furnish Capital, but now I find he has charged up all stock and unpaid accounts so I have been deprived of profits since about Nov. 1898. Mr. Zerbe expects to have money to apply on my account on Saturday, but I am not sure of it, and altho a very little is due for expense since you last made payment I may need money early next week. If you will send me $25 on a/c it will oblige.

"Yours truly,                                                    R. Marsh."

"New York, May 3d, 1899.

"Dwight T. Cortis, Esq.—Dear Sir: As I had but one more charge to date, to complete my expense up to the close of testimony in case of Prendergast & Slinack v. Marsh I add same to a/c rendered. Probably I will send Charles L. Burdett Drawings and Specifications of my latest Improvements in Gas Lamps which I partly explained to you. I have requested Mr. Burdett to consult you as to the advisability of taking out any of my inventions, which I will submit to him for approval, before making any expense, so there may be no misunderstanding about the matter. I have enlarged the scope of my present invention which includes a Lamp, brim full of simple and valuable improvements. I expect Mr. B. can get not less than 20 claims. I can send you copy of specifications if you desire, as all will probably be corrected to-morrow and mailed to Hartford. I have also requested my old attorney in Washington to return my burner application, which I will also submit to Mr. Burdett. I presume Mr. B. will obtain 20 claims at least. I think I am ahead of every one in valves & stop cocks. I saw Mr. White today. He is anxious to see you. He could not sell out at ⅔ the cost of stock in hand without my help in two years. Remit by Friday if you please. I now hope to do some business, before Mr. Bennett begins. Mr. White's idea is that Welsbach Co. are liable to make overtures. Mr. White feels sure I will beat them.

"Yours truly,                                                    Riverius Marsh."

"New York, Sept. 15th, 1899.

"Dwight T. Cortis, No. 22 West St., Boston, Mass.—My dear Sir: Is it possible you have failed to receive my letters of Aug. 8 and Aug. 24th? Our Contract binds me so I am unable to do business without your co-operation. You promised to return to N. Y. as soon as you had visited your sister. Later you came from Boston to N. Y. and promised Mr. White you would soon return. It is a great trial to wait for your pleasure week after week, not to

speak of the irreparable loss of trade already sustained. Our contract provides—'the said agency to begin and take effect as soon as the pending agreement between the said Marsh and Alexander P. White of Brooklyn can be settled so as to free said Marsh from any and all claims by said White.

"I assured you Mar. 22, 1899, that said White had no claims against me, which is a fact. Aug. 2d I gave you this fact. The proof of these facts are and have been subject to your inquiry, and our contract on your part is in full force. Will you kindly send me $50 on a/c as I am in need of money. I had no objection awaiting on your pleasure for a reasonable time and it seems very unkind for you to subject me to such a hardship.

"Awaiting your early reply I am,

 "Yours truly,           Riverius Marsh."

            "New York, August 15th, 1900.

Dwight T. Cortis, Esq., Boston, Mass.—Dear Sir: Replying to your letter of July 24th, 1900, in which you ask in what particular you have failed to carry out your agreement with me. I reply, in every particular, excepting such part thereof which had for its object the acquirement and possession of my valuable invention serial No. 656,306, for which I have received no consideration. You also wish me to advice you, why you have not received samples and specimens of the articles of my manufacture which you asked of me by letter of Sept. 5th. 1899, together with the price of same. Said request was dated Sept. 25th not the 5th as stated, neither did you ask for prices. I sent said articles by Adams Express as described by letter dated Oct. 11th, 1899. You write that you stand ready to carry out completely and in full your agreement with me as outlined in the written contract of March 22d, 1899, on which your business relations with me are based. This can only be done now, by arranging every detail in writing. How soon would it be convenient for you to meet me, and talk over this subject, at my office in New York. Awaiting your early reply. I am,

 "Yours truly,           Riverius Marsh.

"Room 1113 Bowling Green Building, New York."

My conclusion upon the whole evidence is that, while this agreement and assignment appear to be somewhat one-sided, or in favor of Cortis, the complainant has failed to make out a case of either actual or constructive fraud such as would justify a court of equity in setting aside these instruments. If the complainant has a cause of action, it would seem to lie rather in the direction of a suit for breach of contract.

A decree may be entered dismissing both the original bill and the cross-bill, without costs to either party.